UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

| | |
|---|---|
| Granite Re, Inc., an Oklahoma corporation,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>Northern Lines Contracting, Inc., a Minnesota corporation; Northland Dedicated, LLC, a Minnesota limited liability corporation; BR Holdings, Inc., a Minnesota corporation; Blair J. Raitz, a Minnesota resident; and Faribault County, a political subdivision of the State of Minnesota,<br><br>　　　　　　　Defendants. | Case No. 19-CV-2832 PJS/ECW<br><br><br><br>**MEMORANDUM OF LAW<br>IN SUPPORT OF<br>MOTION TO DISMISS UNDER<br>FED. R. CIV. PRO. 12(B)(1) AND 12(B)(3)** |

## **INTRODUCTION**

On November 4, 2019, Granite Re, an Oklahoma corporation, filed a Complaint against Faribault County seeking declaratory judgment on Granite Re's obligation as surety under certain performance and payment bonds. Granite Re also named as defendants the contractor/principal and related entities: Northern Lines Contracting, Inc. ("Northern Lines"); Northland Dedicated, LLC ("Northland"); BR Holdings, Inc. ("BR Holdings"); and Blair J. Raitz ("Raitz") (collectively, known as "Indemnitors"). All the Indemnitors have their principal place of business in Minnesota.

This alignment of parties, which creates diversity jurisdiction, enables Granite Re to file in federal court, but it does not reflect the actual relationship of the parties. Between Granite Re and the Indemnitors there is no present case or controversy on which to base a suit. The Complaint alleges conflict between Granite Re and Faribault County, and

1

between the Indemnitors and Faribault County, but nothing between Granite Re and the Indemnitors that justifies the current alignment of parties. Therefore, Faribault County files this Motion to place Granite Re and the Indemnitors where they belong, together as plaintiffs, and Faribault County as the sole defendant. Ultimately, realignment will destroy diversity and the case, which poses no other bases for federal jurisdiction, must be dismissed for lack of subject-matter jurisdiction. Additionally, Granite Re has bound itself to the Construction Contract between Faribault County and Northern Lines. That contract requires litigation in Faribault County, therefore hearing the matter in this court is improper.

## FACTS

In April 2015, the Indemnitors executed an Agreement of Indemnity in favor of Granite Re, holding them harmless from liability for losses or expenses incurred by reason of Granite Re becoming surety for Northern Lines. Compl. at ¶¶ 9-10. This suretyship related to a project and Contract Northern Lines entered with Faribault County in May of 2017. Compl. at ¶ 10. Justin Declaration, Exhibit 1. As part of that Contract, Granite Re issued payment and performance bonds in the amount of $2,866,032.85, naming Northern Lines as bond principal and Faribault County as obligee. *Id.* at ¶ 10.

Northern Lines informed Faribault County in December 2018 that it had substantially completed the project. *Id.* at ¶ 11. The following January, Faribault County notified Northern Lines of inadequate performance and provided a punch-list of items for completion. *Id.* at ¶ 12. After attempts to compel Northern Lines to finish the project failed, Faribault County notified Northern Lines and Granite Re of its intention to declare a

contractor default for breach of contract obligations. *Id.* at ¶ 19. Northern Lines then alleged breach against Faribault County for failure to remit payments due under the contract for work performed. *Id.* at ¶ 23.

In September, 2019 Faribault County accepted a bid from another contractor to finish the project. *Id.* at ¶ 24. Considering the extra cost of finishing the project as damages arising from breach of contract by Northern Lines, Faribault County brought a claim against Granite Re for $1,037,953.35—the cost of completion. *Id.* at ¶ 25. Granite Re denied any obligation to pay Faribault County. *Id.* at ¶ 27.

The Contract between Faribault County and Northern Lines consisted of a series of documents, including General and Supplementary Conditions. The Supplementary Conditions contain modifications to the dispute resolution provisions set out in section 17 of the General Conditions. Section 17.01.D contains a forum selection clause stating that any litigation arising from the Contract will be litigated in the district court of the county in which the project is located. Justin Declaration, Ex. 2. The performance bond issued by Granite Re is also part of the Contract. Section 1 of the Bond states that the Contractor and Surety, jointly and severally, bind themselves to the Owner for performance of the Construction Contract, which is incorporated herein by reference. Justin Declaration, Ex. 3.

## **LEGAL STANDARD**

Granite Re seeks relief under the Declaratory Judgment Act, which permits the federal courts to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. The Act creates a statutory remedy only; it does not

confer federal jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). A party seeking relief under the Act must assert an independent basis for federal jurisdiction. *Id.* Plaintiff asserts federal jurisdiction under 28 U.S.C. § 1332, diversity of citizenship. Section 1332 requires that the amount in controversy exceeds $75,000.00 and that the parties be completely diverse—that is, no plaintiff may be a citizen of the same state as any of the defendants. *See, e.g.*, *Saunders v. Countrywide Home Loans of Minnesota, Inc.*, 548 F. Supp. 2d 692, 693 (D. Minn. 2008).

The alignment of the parties for diversity jurisdiction may be challenged, and changed. The long-standing legal standard for that determination was set out by the United States Supreme Court in *City of Indianapolis v. Chase Nat. Bank of City of New York, 314 U.S. 63 (1941)*. There the Court laid out the governing principles for these decisions.

> To sustain diversity jurisdiction there must exist an 'actual', 'substantial', controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side. Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants. It is our duty, as it is that of the lower federal courts, to 'look beyond the pleadings, and arrange the parties according to their sides in the dispute.' Litigation is the pursuit of practical ends, not a game of chess. Whether the necessary 'collision of interest' exists, is therefore not to be determined by mechanical rules. It must be ascertained from the 'principal purpose of the suit', and the "primary and controlling matter in dispute'.

Id. at 69. (multiple citations omitted).

When determining whether and how to realign parties, Minnesota courts examine the facts at the time of complaint for the existence of an actual conflict. *Alliance Energy Services, LLC v. Kinder Morgan Cochin LLC*, 80 F. Supp. 3d 963, 972 (D. Minn. 2015). "[I]f there is any actual and substantial conflict existing between the parties as aligned, the court

should not realign them." *Id.* (quotation and citations omitted). Formal designation of a party is irrelevant:

> For purposes of testing the jurisdiction of a federal court on the basis of diversity of citizenship, it is immaterial how the parties may have been designated in the pleadings, since the court must align them for jurisdictional purposes on the basis of their actual legal interests and the apparent results to them, if the object sought to be accomplished by the litigation is successful.

*Thomson v. Butler*, 136 F.2d 644, 647 (8th Cir.), *cert. denied*, 320 U.S. 761 (1943), *reh. den.*, 320 U.S. 813 (1943). Also irrelevant for determination of actual and substantial conflict are past ancillary or secondary conflicts that a party opposing realignment might allege as a basis for diversity. The focus is not on these ancillary conflicts, but adversity is to be determined by looking to the primary purpose or primary issue embraced by the litigation. *Polanco v. H.B. Fuller Co.* 941 F. Supp. 1512, 1523 (D. Minn. 1996). (citing *Indianapolis v. Chase National Bank*).

In a case, such as the present one, where parties are arranged to acquire diversity jurisdiction, realignment of parties to reflect actual conflict may result in a loss of complete diversity, permitting the movant to seek dismissal of the action from federal court for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1). Rule 12(b)(1) authorizes a motion to dismiss a complaint for lack of subject matter jurisdiction. Federal courts are courts of limited jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998). "The requirement that jurisdiction be established as a threshold matter spring[s] from the nature and limits of the judicial power of the United States and is inflexible and without exception." *Id.* (quotation omitted). At all times, it is the burden of the party

asserting jurisdiction to prove by a preponderance of the evidence that jurisdiction exists. *V. S. Ltd. P'ship v. Dep't of Hous. and Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000).

## LEGAL ARGUMENT

### A. Between Granite Re and the Indemnitors There Is no Actual and Substantial Conflict.

The Complaint sets Granite Re, an Oklahoma corporation, against all the Minnesota citizens designated—improperly—as defendants. This alignment of parties secures federal jurisdiction, but does not reflect the actual alignment of interests in the suit. Proper arrangement of parties would place the Indemnitors as plaintiffs alongside Granite Re, leaving Faribault County as the sole defendant.

On its face, the Complaint alleges no actual and substantial conflict between Granite Re and the Indemnitors. At the heart of the Complaint is one controversy: the cross-accusation of breach of contract between Northern Lines and Faribault County and the denial of liability for damages flowing from the breach by Granite Re and the Indemnitors. Northern Lines alleges that Faribault County breached their contract by refusing to remit payments owed for work performed. Compl. at ¶ 23. Faribault County, in turn, alleges that Northern Lines failed to finish the project adequately. *Id.* at ¶¶ 18-22. To complete the project, Faribault County was forced to hire a second contractor, at a cost of over one million dollars beyond the contract amount. *Id.* at ¶ 25. Both Northern Lines and Granite Re deny any liability to Faribault County. *Id.* at ¶¶ 26-7.

Furthermore, Granite Re and the Indemnitors share an interest in resolving the actual conflict—the breach of contract—in the Indemnitor's favor, against Faribault County. If

the court finds that Faribault County breached its contract, and that the Indemnitors are not liable, then Granite Re will not be liable for damages under the performance bonds. It is not difficult to imagine how this case will look at trial. There will not be accusations by Granite Re that Northern Lines breached the contract and therefore must reimburse Granite Re for any payments. Granite Re and Northern Lines will present a united front against the County, and argue that Northern Lines never breached the contract. They will both seek to lay all blame on the County. The best outcome for the Indemnitors is the best outcome for Granite Re, which means that not only do Granite Re and the Indemnitors have no conflict between them, but they share an interest in the same outcome of the actual and substantial conflict that forms this suit.

### B. A Hypothetical or Future Conflict is Ancillary and Will Not Control Party Alignment.

Granite Re has aligned Faribault County and Northern Lines as co-defendants in this case—despite the fact that the County and Northern Lines are as adverse to each other as possible. Potentially, given how a future court may construe the rights of the parties, a case may arise between Granite Re and the Indemnitors if the contractors are found liable for a breach of contract, but such contingent liability is irrelevant here: The actual and substantial conflict test cannot be satisfied by the hypothesis of a future conflict. *Alliance Energy Services, LLC*, 80 F. Supp. 3d at 972.

Moreover, diversity of citizenship is assessed at the time the complaint is filed. *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991). A party cannot maintain diversity of citizenship on an alignment of interests that reflects a speculative

future conflict. *See Universal Underwriters Ins. v. Wagner*, 367 F.2d 866, 871 (1966) (observing that "[t]he question of realignment, involving jurisdiction, must be tested at the time of filing of the complaint.").

Even if Granite Re could prove that the Indemnitors will be an adverse party *after* further developments in the case, this has no bearing on diversity jurisdiction or on how the parties should be arranged at the time of the filing of the Complaint. This court addressed the issue squarely in *Polanco v. H.B. Fuller Co.*, 941 F. Supp. 1512 (D. Minn. 1996). In *Polanco*, a Guatemalan citizen brought a wrongful death action against an American glue manufacturer after her brother became addicted to, and died from, inhaling the fumes of defendant's product. Defendant argued that its Guatemala-based subsidiary should be joined as an indispensable party, aligned against the plaintiff. Plaintiff rebutted defendant's argument on the grounds that a potential conflict may arise between the American company and its Guatemalan subsidiary for contribution. The court acknowledged the possibility of a claim, but found it "merely ancillary to the underlying purpose of the suit." *Id.* at 1523. As a consequence, the court held the Guatemalan entity must be joined as co-defendant with its parent company and diversity destroyed. The court dismissed the suit.

Another court, facing circumstances almost identical to ours, reached the same conclusion. In *Federal Ins. Co. v. Bill Harbert Const. Co.*, 82 F. Supp. 2d 1331 (S.D. AL. 1999), plaintiff Federal Insurance, a surety, brought suit under the Declaratory Judgment Act against a contractor principal and a municipal obligee, Mobile's Board of Water and Sewer Commissioners (the "Board"), seeking determination of no liability under bond

obligations for breach of contract. *Id.* The Board moved to realign the parties on the grounds that the actual conflict lay between the Board and the contractor—the parties asserting breach of contract claims against one another. *Id.* at 1332. On that issue, the surety and the contractor were aligned. *Id.* In response, the surety argued that the parties should stay as pleaded, because a potential conflict may arise with the indemnifying contractor should the court find in the Board's favor regarding breach of contract. The court held that ancillary issues cannot control the alignment of the parties:

> [The court] acknowledges that [contractor's] possible duty to indemnify [surety] at some point in the future could create an actual dispute between these parties. That dispute, however, is merely secondary to the primary issue in this declaratory judgment action, which is whether … the Board wrongfully breached its contractual obligations to [contractor] during the course of the construction projects.

*Id.* at 1337-8. Secondary, or ancillary, conflict is insufficient to permit an alignment of the parties that ignores the actual dispute existing at the time of the filing of the Complaint. The court realigned the parties and dismissed for lack of jurisdiction. *Id.* at 1338.

Potential controversy between Granite Re and the Indemnitors is "merely ancillary" to the primary dispute of liability for breach of contract between Northern Lines and Faribault County. Applying the teaching of *Polanco* and *Federal Ins. Co*, this Court should realign the parties, without consideration for ancillary issues, to reflect the true conflict. After doing so, the court will no longer have jurisdiction over the parties and the case must be dismissed.

### C. Venue in this court is improper because Granite Re has bound itself to the Construction Contract's forum selection clause.

"Forum selection clauses are prima facie valid and are enforced unless they are unjust or unreasonable or invalid for any reasons such as fraud or overreaching." *M.B. Rests. Inc. v. CKE Rests. Inc, 183 F.3d 750, 752* (8th Cir. 1999). A valid forum selection clause is entitled to "controlling weight in all but the most exceptional cases" because it "represents the parties' agreement as to the most proper forum and federal courts have a strong policy of enforcing such clauses. *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex., 571 U.S. 49, 62-66* (2013). Even in cases where a third party has not signed a forum selection clause "a non-party to a contract can be held bound by the contract's forum selection clause when that non-party is 'closely related' to the dispute such that it becomes 'foreseeable' that [the non-party] will be bound." *ARP Wave, LLC v. Salpeter, 364 F.Supp.3d 990, 995* (D. Minn. 2019), *citing, Marano Enters. Of Kan. v. Z-Teca Rests, L.P,* 254 F.3d 753, 757 (8th Cir. 2001); *Medtronic v. Endologix, Inc., 530 F.Supp.2d 1054* (D. Minn. 2008) (same).

In the present matter, the contract between Northern Lines and Faribault County consisted of several documents, including a set of Supplementary Conditions. Section 17.01 of those Conditions deals with dispute resolution. Section 17.01.D states that "Any litigation concerning claims under the Contract shall be venued in the County District Court of the County the project is located within." This provision requires any dispute be venued in state court in Faribault County. This venue provision is binding on Granite Re as well

as Northern Lines.  The Performance Bond issued by Granite Re contains various promises and procedures.   Section 1 of the Bond states as follows.

> The Contractor and Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors, and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference.

It is significant that the Surety is not binding itself to just the performance of the construction *project*, it is binding itself to the *contract*, which is incorporated in the bond. The dispute resolution procedures are as much a part of the Construction Contract as are the promises to pay and perform.  Therefore, by binding itself to the Construction Contract, it also has bound itself to the dispute resolution mechanism set out in the Contract.   Even if Granite Re had not expressly bound itself to performance of the Contract, which it did, it would be properly bound by it as a closely related third party.  *See, ARP Wave*.  However, that analysis is not needed as Granite Re incorporated the Contract into its bond.  That Contract requires litigation to occur in Faribault County and this case should be dismissed to allow the litigation to proceed in the forum the Owner, Contractor, and Surety all agreed upon.

## **CONCLUSION**

In the consideration of diversity jurisdiction, the federal courts have been especially parsimonious:

> The dominant note in the successive enactments of Congress relating to diversity jurisdiction is one of jealous restriction, of avoiding offense to state sensitiveness, and of relieving the federal courts of the overwhelming burden of business that intrinsically belongs to the state courts' in order to keep them free for their distinctive federal business.

*City of Indianapolis v. Chase Nat. Bank of City of New York*, 314 U.S. 63, 76 (1941) (quotation omitted). Granite Re has attempted to establish diversity jurisdiction by an alignment of parties that ignores actual and substantial conflicts existing at the time of the filing of the Complaint between the parties in favor of an alignment that secures diversity jurisdiction and a hearing in federal court. But the law does not permit such convolutions. Granite Re and the Indemnitors belong together, as plaintiffs, against the only adverse party, Faribault County. We ask the court to align the parties properly and then to dismiss the case under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction. Alternatively, we request the court to dismiss the case because it is improperly venued based on the forum selection clause.

Dated: January 3, 2020

RINKE NOONAN

*/s/Roger C. Justin*
Roger C. Justin (#197270)
Suite 300 US Bank Plaza Building
1015 W. St. Germain St.
P.O. Box 1497
St. Cloud, MN  56302-1497
(320) 251-6700
(320) 656-3500 fax
Email: Rjustin@rinkenoonan.com

**Attorneys for Defendant Faribault County**