UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

GRANITE RE, INC.,                                    Case No. 19-CV-2832 (PJS/ECW)

        Plaintiff,

v.
                                ORDER

NORTHERN LINES CONTRACTING,
INC.; NORTHLAND DEDICATED, LLC;
BR HOLDINGS, INC.; BLAIR J. RAITZ;
and FARIBAULT COUNTY,

        Defendants.

---

Daniel R. Gregerson, David H. Gregerson, and David R. Hackworthy,
GREGERSON, ROSOW, JOHNSON & NILAN, LTD., for plaintiff
Granite Re, Inc.

Jeffrey A. Wieland and Aaron A. Dean, MOSS & BARNETT, P.A., for
defendants Northern Lines Contracting, Inc., Northland Dedicated, LLC,
BR Holdings, Inc., and Blair J. Raitz.

Roger C. Justin, RINKE NOONAN, for defendant Faribault County.

In May 2017, defendant Northern Lines Contracting ("Northern Lines") entered

into a construction contract with defendant Faribault County ("the County"). Plaintiff

Granite Re, Inc. ("Granite") was the surety on the project. The County eventually

alleged that Northern Lines breached its obligations under the construction contract and

submitted a claim to Granite. Granite responded by filing this declaratory-judgment

action seeking a determination of the parties' respective rights and obligations under

the construction contract and two related agreements. This matter is currently before

the Court on the County's motion to dismiss for lack of subject-matter jurisdiction and under the doctrine of forum non conveniens.  For the reasons that follow, the motion is granted in part, and Granite's claims are dismissed under the doctrine of forum non conveniens.

## I.  BACKGROUND

This lawsuit relates to three agreements:

First, the *construction contract*:  On May 16, 2017, Northern Lines executed a contract to build drainage ditches for the County.  ECF No. 25 ¶ 10.  The construction contract, which was drafted by the County, includes a forum-selection clause providing that "[a]ny litigation concerning claims under the Contract shall be venued in the County District Court of the County the project is located within."  ECF No. 37-1 at 19–20.  The "County District Court" to which the construction contract refers is the Faribault County District Court.

Second, the *performance bond*:  As required by Minnesota law and by the terms of the construction contract, Northern Lines obtained a performance bond from Granite in the amount of the contract price, or $2,866,032.85.  *See* Minn. Stat. § 574.26; ECF No. 25 ¶ 10.  The performance bond, which was also drafted by the County, provides that, "[t]he Contractor [Northern Lines] and Surety [Granite], jointly and severally, bind themselves . . . to the Owner [the County] for the performance of the Construction

Contract, which is incorporated herein by reference."  ECF No. 37-1 at 23.  The bond

also includes a forum-selection clause, which provides that "[a]ny proceeding, legal or

equitable, under this Bond may be instituted in any court of competent jurisdiction in

the location in which the work or part of the work is located . . . ."  *Id.* at 24.

Third, the *indemnity agreement*:  By separate agreement, Northern Lines and three

parties related to Northern Lines (defendants BR Holdings, Inc., Northland Dedicated,

LLC, and Blair Raitz)—collectively, the "Indemnitors"—agreed to indemnify

Granite for any liability, losses, or expenses that Granite incurs by reason of serving as

surety for Northern Lines.  ECF No. 25 ¶ 9; ECF No. 42-1.  In other words, if Granite has

to pay the County under the performance bond, then the Indemnitors have to

reimburse Granite under the indemnity agreement.  The indemnity agreement does not

contain a forum-selection clause.

On December 21, 2018, Northern Lines informed the County that it had

substantially completed the work required under the contract.  ECF No. 25 ¶ 11.  The

County issued a punch list of items that still had to be completed.  *Id.* ¶¶ 12, 18.  After

Northern Lines allegedly failed to complete those items, the County paid an outside

contractor to do so.  *Id.* ¶ 24.  On October 31, 2019, the County submitted a claim under

the performance bond in the amount of $1,037,953.35, which represented the difference

between what the County paid to the outside contractor to finish the work that

Northern Lines allegedly failed to do and the amount that the County had held back from Northern Lines. *Id.* ¶ 25.

In response to the County's claim, Granite filed this declaratory-judgment action against the County, Northern Lines, and the other Indemnitors. Granite seeks a determination of the parties' rights and obligations under the construction contract, the performance bond, and the indemnity agreement.

The County has moved to dismiss this action for lack of subject-matter jurisdiction. In the alternative, the County has moved to dismiss this action pursuant to the forum-selection clause in the construction contract. For the reasons that follow, the Court finds that it has subject-matter jurisdiction, but also finds that Granite's claims must be dismissed under the doctrine of forum non conveniens because those claims fall within the construction contract's forum-selection clause.

## II. STANDARD OF REVIEW

The County has moved to dismiss this action for lack of subject-matter jurisdiction. Because the County raises a fact-based challenge to Granite's assertion of subject-matter jurisdiction, the Court "need not accept 'bare allegations'" of Granite's pleading, but rather may "weigh the evidence." *Disability Support All. v. Heartwood Enters., LLC*, 885 F.3d 543, 547 (8th Cir. 2018) (citation omitted).

-4-

The County has also moved to dismiss this action on the basis of the forum-selection clause in the construction contract. When a federal court finds that a valid, mandatory forum-selection clause requires that a case be litigated in state court, dismissal is warranted under the doctrine of forum non conveniens unless the nonmoving party can show "that public-interest factors overwhelmingly disfavor" dismissal. *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 67 (2013).

### III. SUBJECT-MATTER JURISDICTION

Granite asserts that this Court has diversity jurisdiction under 28 U.S.C. § 1332. On the face of the complaint, Granite appears to be correct. The amount in controversy exceeds $75,000, and it appears that the parties are completely diverse. Granite, the sole plaintiff, is a citizen of Oklahoma, while all of the defendants are citizens of Minnesota.

The County argues, however, that the parties are improperly aligned. Because Granite and the Indemnitors share a common interest in establishing that Northern Lines did not breach the construction contract, the County argues that the Indemnitors should be realigned as plaintiffs, leaving the County as the sole defendant. Realignment would, of course, destroy complete diversity, as Minnesota citizens would appear on both sides of the "v."

As the Supreme Court explained in *City of Indianapolis v. Chase National Bank*, courts are not bound "by the parties' own determination of who are plaintiffs and who defendants." 314 U.S. 63, 69 (1941). Rather, courts must "look beyond the pleadings, and arrange the parties according to their sides in the dispute." *Id* (citation and quotation marks omitted). The Supreme Court explained that "[t]o sustain diversity jurisdiction there must exist an actual, substantial, controversy between citizens of different states . . . . Whether the necessary collision of interest exists . . . must be ascertained from the principal purpose of the suit, and the primary and controlling matter in dispute." *Id.* (internal citations and quotation marks omitted).

The courts of appeals are divided over how *Indianapolis* should be applied. *See Fed. Ins. Co. v. Bill Harbert Constr. Co.*, 82 F. Supp. 2d 1331, 1334 (S.D. Ala. 1999) (describing the circuit split). Some circuits apply the "principal purpose" test, under which courts identify "the primary matter in dispute and then align the parties according to their positions with regard to that issue." *Id.* Others circuits apply the "actual and substantial conflict" test, under which courts take into account "all potential conflicts between the named parties and do not distinguish between primary and secondary issues when determining whether realignment is appropriate." *Id.* So long as there is at least one actual and substantial conflict between the nominal plaintiff and the nominal defendant, the parties are not realigned. *Id.*

As counsel for the County conceded at oral argument, the Eighth Circuit applies the actual-and-substantial-conflict test.  *See Universal Underwriters Ins. Co. v. Wagner*, 367 F.2d 866, 870–71 (8th Cir. 1996); *Interlachen Props., LLC v. State Auto Ins. Co.*, 136 F. Supp. 3d 1061, 1067 (D. Minn. 2015) ("In deciding whether to realign the parties, the Eighth Circuit applies the 'actual and substantial conflict' test.").  The County argues, however, that the Eighth Circuit is mistaken and that the actual-and-substantial-conflict test is not consistent with *Indianapolis*.  Whatever the merits of the County's argument, this Court is bound by Eighth Circuit precedent.

Without question, there are actual and substantial conflicts between Granite and the Indemnitors (including Northern Lines).  In Count I of the amended complaint, Granite seeks to hold the Indemnitors liable to Granite under the indemnity agreement if Granite is found liable to the County under the performance bond.  ECF No. 25 ¶¶ 29–33.  This is an actual and substantial conflict, even though it will not arise unless Northern Lines is found to have breached the construction contract, an issue on which Granite and the Indemnitors are aligned.  *See Fid. & Deposit Co. of Md. v. City of Sheboygan Falls*, 713 F.2d 1261, 1264–68 (7th Cir. 1983) (finding an actual and substantial conflict between surety and bond principal based on "potential conflict" over principal's contingent liability under indemnity agreement).

-7-

In Count II of the amended complaint, Granite seeks (among other things) indemnification from the Indemnitors under the indemnity agreement for the attorney's fees and costs that Granite has already incurred in connection with the County's claim under the performance bond.  ECF No. 25 ¶¶ 34–37.  This claim is not contingent on any future event, as according to Granite, the Indemnitors are liable to it whether or not Northern Lines is ultimately found to have breached the construction contract.

Finally, in Count III of the amended complaint, Granite alleges that the Indemnitors are obligated under the indemnity agreement to provide Granite with cash collateral.  *Id.* ¶¶ 38–40.  This too is not a contingent claim; Granite alleges that the Indemnitors must provide cash collateral *now*, before anyone knows how the dispute between the County and Northern Lines will be resolved.

Clearly, then, there are actual and substantial conflicts between Granite and the Indemnitors, and realignment of the parties is not warranted under Eighth Circuit case law.  The County's motion to dismiss for lack of subject-matter jurisdiction is denied.

## IV.  FORUM NON CONVENIENS

The County next argues that because the construction contract's forum-selection clause requires all litigation concerning claims under the contract to be litigated in the Faribault County District Court, this case should be dismissed pursuant to the doctrine of forum non conveniens.  *See Atl. Marine,* 571 U.S. at 60 ("[T]he appropriate way to

enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens.").  To resolve this motion, the Court must determine (1) whether Granite is bound by the construction contract's forum-selection clause, given that it is not a party to the construction contract; (2) whether Granite's claims fall within the scope of that forum-selection clause; (3) whether that forum-selection clause is valid; and (4) whether that forum-selection clause should be enforced in light of countervailing public-interest factors.

### A.  Applicability of the Forum-Selection Clause to Granite

This litigation involves two forum-selection clauses.  The construction contract, executed by the County and Northern Lines, provides that "[a]ny litigation concerning claims under the Contract shall be venued in the County District Court of the County the project is located within."  ECF No. 37-1 at 19–20.  The performance bond, executed by Granite and Northern Lines, provides that "[a]ny proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located."  *Id.* at 24.  Granite argues that, because Granite is a party only to the performance bond, and not to the construction contract, it is bound only by the former's forum-selection clause.

The Court disagrees.  Granite and Northern Lines are indeed parties to the performance bond.  In the first paragraph of that performance bond, Granite and

Northern Lines "bind themselves . . . to [the County] for the performance of the Construction Contract, which is incorporated herein by reference." *Id.* at 23. Thus, in the performance bond, Granite bound itself to the terms of the construction contract, and Granite explicitly agreed to incorporate the terms of the construction contract into the performance bond. "Basic contract principles instruct that where a writing refers to another document, that other document . . . becomes constructively a part of the writing" and "[t]he incorporated matter is to be interpreted as part of the writing." *Halbach v. Great-W. Life & Annuity Ins. Co.*, 561 F.3d 872, 876 (8th Cir. 2009) (citation and quotation marks omitted). The terms of the construction contract were obviously known to Granite, as the purpose of the performance bond was to ensure that Northern Lines performed its obligations under that contract. *See Marolt v. Alliant Techsystems, Inc.*, 146 F.3d 617, 621 (8th Cir. 1998) (a writing may incorporate another document if the terms of the incorporated document are known or easily available to the contracting parties).

The Court emphasizes that the performance bond incorporates the construction contract without limitation.[1] The performance bond does not provide that only some of

---

[1]Granite argues that only some of the terms of the construction contract were incorporated into the performance bond because the following sentence appears immediately before the signature block on the first page of the bond: "[Granite] and [Northern Lines], intending to be legally bound hereby, subject to the terms set forth below, do each cause this Performance Bond to be duly executed . . . ." ECF No. 37-1

(continued...)

the terms of the construction contract are incorporated.  Nor does the performance bond

provide that the construction contract is incorporated by reference "except as otherwise

provided" or "except insofar as it is inconsistent with this performance bond."[2]  As a

result, all of the terms of the construction contract—including the forum-selection

clause—are binding on Granite.  *See, e.g., Pioneer Mech. Servs., LLC v. HGC Constr. Co.*,

No. 2:18-CV-00507, 2018 WL 6521529, at *4 (W.D. Pa. Dec. 12, 2018) (holding that

subcontractor's surety was bound by forum-selection clause in master contract where

the master contract was incorporated into the bond agreement by reference); *Kansas City*

*S. Ry. Co. v. Hanover Ins. Co.*, 159 F. Supp. 3d 729, 738 (S.D. Miss. 2015) (same).

---

[1](...continued)
at 22 (emphasis added).  Granite argues that because the parties executed the
performance bond "subject to the terms set forth below," none of those
terms—including the forum-selection clause—could be modified in any way.  Granite
ignores the fact that one of the "terms set forth below" to which the parties agree "to be
legally bound" is the very first paragraph, and in that first paragraph the parties bind
themselves to comply with the terms of the construction contract and incorporate that
contract into the performance bond.

[2]The language of the performance bond in this case contrasts with the language
of performance bonds in cases such as *Jefferson Parish Consolidated Garbage District No. 1
v. Waste Management of Louisiana, L.L.C.*, No. 09-6270, 2010 WL 1731204 (E.D. La. Apr. 28,
2010).  In that case, the incorporation clause of the performance bond provided that
"[the underlying contract] is made a part hereof and incorporated herein by reference,
*except that nothing said therein shall alter, enlarge, expand or otherwise modify the term of the
bond as set out below*."  *Id.* at *2 (emphasis added).  No such limiting language appears in
Granite's performance bond.

Granite next argues that, if it is bound by the construction contract, then it is bound by *two* forum-selection clauses:  the clause that appears in the performance bond and the clause that appears in the construction  contract.  Granite argues that these two forum-selection clauses conflict and therefore create an ambiguity.  According to Granite, because both the performance bond and the construction contract were drafted by the County, the ambiguity must be resolved against the County and in favor of Granite.  *See Turner v. Alpha Phi Sorority House*, 276 N.W.2d 63, 66 (Minn. 1979) ("Where there are ambiguous terms or the intent is doubtful, it is axiomatic that the contract will be construed against the drafter.").  In this context, that means enforcing the forum-selection clause in the performance bond (which permits Granite to litigate its claims in federal court) and ignoring the forum-selection clause in the construction contract (which may require Granite to litigate its claims in state court).

Unfortunately for Granite, however, the premise of its argument is mistaken, as the forum-selection clause in the performance bond does not conflict with the forum-selection clause in the construction contract.  The forum-selection clause in the performance bond provides that "[a]ny proceeding . . . under this Bond *may* be instituted in any court of competent jurisdiction in the location in which the work . . . is located."  ECF No. 37-1 at 24 (emphasis added).  That clause is *permissive*; it does not require that any lawsuit be filed in any particular forum.  By contrast, the forum-

selection clause in the construction contract provides that "[a]ny litigation concerning claims under the Contract *shall* be venued in [the Faribault County District Court]." *Id.* at 19–20 (emphasis added). That clause is *mandatory*; it requires lawsuits concerning claims under the construction contract to be filed in the Faribault County District Court.

Hence, it is possible to harmonize the two clauses. Lawsuits brought under the performance bond that do not concern claims under the construction contract may be filed—but do not have to be filed—in either the United States District Court for the District of Minnesota or the Faribault County District Court. And lawsuits brought under the performance bond that concern claims under the construction contract must be filed in the Faribault County District Court.

A number of judicial decisions address precisely the situation presented by this case: a party who is bound by two forum-selection clauses, one of which is a permissive clause that allows litigation to be brought in Forum A or Forum B, and the other of which is a mandatory clause that requires litigation to be brought in Forum A. Virtually without exception, courts have found that the two forum-selection clauses do not conflict, and courts have required lawsuits that are within the scope of the mandatory clause to be litigated in Forum A, even if the permissive clause would otherwise permit them to be litigated in Forum B.

For example, in *Kansas City Southern Railway Company v. Hanover Insurance Company*, a general contractor that had been hired by a city to build a bridge entered into a master agreement with a subcontractor to perform most of the work. 159 F. Supp. 3d 729, 731 (S.D. Miss. 2015). The subcontractor obtained a performance bond from a surety to secure its performance under the master agreement. *Id.* In the performance bond, the surety and the subcontractor bound themselves to perform the master agreement and incorporated the terms of the master agreement into the performance bond through a clause that was identical to the incorporation clause in Granite's performance bond: "The contractor and the surety, jointly and severally, bind themselves . . . to the owner for the performance of the construction contract, which is incorporated herein by reference." *Id.*

Like the performance bond in this case, the performance bond in *Kansas City* contained a permissive forum-selection clause that allowed suit to be brought "in any court of competent jurisdiction in the location in which the work or part of the work is located." *Id.* at 736. And like the construction contract in this case, the master agreement in *Kansas City* contained a mandatory forum-selection clause: "Except as necessary to enforce indemnity or defense obligations, the parties must bring court proceedings in Mississippi state court located in Warren County, Mississippi." *Id.* at 731. The general contractor sued the surety in the Circuit Court of Warren County,

-14-

Mississippi, alleging that the subcontractor had failed to perform its obligations under the master agreement, and demanding recovery on the performance bond. *Id.* The surety removed the case to federal court, and the general contractor moved to remand, citing the mandatory forum-selection clause in the master agreement. *Id.*

The district court granted the motion to remand, finding that the surety was bound by the mandatory forum-selection clause in the master agreement—even though the surety was not a party to the master agreement—because the master agreement had been incorporated into the performance bond, and because the performance bond "[did] not limit, explicitly or implicitly, the terms of the Master Agreement which were incorporated." *Id.* at 737. The district court further found that the permissive forum-selection clause in the performance bond did not conflict with the mandatory forum-selection clause in the master agreement. The district court explained:

> [C]ontrary to Hanover's suggestion, [the forum-selection clause in the performance bond] is not inconsistent with the forum selection clause in the Master Agreement and does not create ambiguity. "When interpreting a contract, a court should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *In re Velazquez*, 660 F.3d 893, 898 (5th Cir.2011) (internal quotation marks and citation omitted). Here, whereas the forum selection clause in the Master Agreement requires that suit be brought "in Mississippi state court located in Warren County, Mississippi," the forum selection clause in the Bond is permissive, allowing (though not requiring) suit to be filed where the work is located. As the work is located in Warren

County, the clauses are properly read as complementary and
not contradictory.

*Id.*

This Court agrees with the reasoning of *Kansas City* and the reasoning of other

cases that have reached similar conclusions in similar circumstances. *See, e.g., Partners*

*of Mass., LLC v. Fantasia*, No.: 2:15-CV-07960 (KSH) (CLW), 2016 WL 7476355, at *3

(D.N.J. Dec. 29, 2016); *Nicolais v. Balchem Corp.*, No. 4:14-CV-1936 CAS, 2015 WL

6436747, at *4 (E.D. Mo. Oct. 22, 2015); *Summa Humma Enters., LLC v. Fisher Eng'g*, No.

12-CV-367-LM, 2013 WL 57042, at *5 (D.N.H. Jan. 3, 2013); *Regalia, LLC v. Bankfirst*,

No. 09-20780-CIV, 2009 WL 10656843 (S.D. Fla. May 8, 2009); *McWane, Inc. v. Lanier*,

C.A. No. 9488–VCP, 2015 WL 399582, at *10 (Del. Ch. Jan. 30, 2015).  The Court therefore

holds that the forum-selection clause in the construction contract applies to Granite.

### B.  Scope of the Forum-Selection Clause

The Court's next task is to determine which of Granite's claims fall within the

scope of the construction contract's forum-selection clause.[3]  Again, that clause requires

---

[3]It is not clear whether federal or state law governs the interpretation of a forum-
selection clause. *See ARP Wave, LLC v. Salpeter*, 364 F. Supp. 3d 990, 994 n.2 (D. Minn.
2019) (collecting cases); *id.* at 998 n.8 (describing the apparent majority view among
courts of appeals that interpreting the scope of a forum-selection clause is matter of
substantive contract interpretation governed by state law).  The Court applies
Minnesota law, under which the Court "interpret[s] contract terms consistent with their
plain, ordinary, and popular meaning to give effect to the intention of the parties as it
appears from the context of the entire contract." *Kremer v. Kremer*, 912 N.W.2d 617, 626

(continued...)

that "[a]ny litigation concerning claims under the [Construction] Contract shall be

venued in [the Faribault County District Court]."  ECF No. 37-1 at 19–20.  Thus, the

clause applies not just to claims *under* the construction contract, but to claims that *refer*

or *relate* to claims under the construction contract.  *See, e.g.*, Oxford English Dictionary

(3d ed. 2015) (defining "concerning" as "[i]n reference or relation to; regarding, about");

The American Heritage Dictionary of the English Language (5th ed. 2011) (defining

"concerning" as "[i]n reference to").

　　　In Count I, Granite seeks a declaratory judgment regarding (1) Granite's liability

to the County under the performance bond and (2) the Indemnitors' liability to Granite

under the indemnity agreement.  ECF No. 25 ¶¶ 29–33.  Both of these claims clearly

relate to the County's claim that Northern Lines breached the construction contract.

The Court cannot determine if the Indemnitors are liable to Granite under the

indemnity agreement without determining whether Granite is liable to the County

under the performance bond, and the Court cannot determine whether Granite is liable

to the County under the performance bond without determining whether Northern

Lines breached the construction contract.  *See McCarty v. City of St. Paul*, 155 N.W.2d

459, 464 (Minn. 1967) (explaining that a surety is liable only to the extent the bond

---

[3](...continued)
(Minn. 2018).  But the result would be the same under any of the three "federal"
approaches described by the Eighth Circuit in *Terra International, Inc. v. Mississippi
Chemical Corp.*, 119 F.3d 688, 694 (8th Cir. 1997).

principal is found liable).  Reflecting this fact, Count I begins as follows:  "The County alleges that [Northern Lines] has breached its contract obligations for which relief is accorded by the Bond issued by Granite."  ECF No. 25 ¶ 30.  Count I makes clear that all of the relief it seeks is premised on the Court's resolution of the County's claim that "[Northern Lines] has breached its contract obligations."  *Id.*

In Count II, Granite asserts a claim against the Indemnitors under the indemnity agreement.  ECF No. 25 ¶¶ 34–37.  Granite alleges that "[a]s a result of the County's bond claim, Granite has sustained damages, and will continue to sustain damages, for legal fees, costs, and expenses," and that Granite is entitled to be indemnified for those damages by the Indemnitors.  *Id.* ¶ 37.  In other words, Granite alleges that, because the County claims that Northern Lines breached the construction contract, Granite has suffered damages and is entitled to indemnification.  Granite's claim therefore "concern[s]"—that is, refers or relates to—a claim under the construction contract; indeed, a claim under the construction contract is the very *predicate* for Granite's claim.

Finally, Count III seeks specific performance of the Indemnitors' alleged obligation to provide Granite with cash collateral.  *Id.* ¶¶ 38–40.  Like its claim of entitlement to indemnification, Granite's claim that it is entitled to cash collateral is premised on the County's claim against the performance bond—i.e., the County's claim that Northern Lines breached the construction contract.  *See id.* ¶ 40 (alleging

entitlement to cash collateral "as security for the County's bond claims").  Again,

Granite's claim "concern[s]" a claim under the construction contract, as such a claim is a

predicate for Granite's claim to the relief it seeks.  In short, all of the claims asserted by

Granite in this lawsuit are encompassed by the forum-selection clause of the

construction contract.

Granite and Northern Lines raise a couple of additional arguments regarding the

interpretation of the construction contract:

First, Granite and Northern Lines point out that the term "Claim" is defined in

Article 1.1.10 of the construction contract to include certain demands or assertions made

by the County or by Northern Lines, but not to include demands or assertions made by

third parties, such as Granite.  ECF No. 42-3 at 16–17.[4]  As the Court has already

---

[4]There is some reason to doubt that Article 1.1.10's definition of "Claim" even
applies to the use of the word "claim" in the forum-selection clause.  First, Article 1.1.10
appears in the base contract, while the forum-selection clause appears in the
supplementary conditions to that contract.  The word "claim" is always capitalized
when it is used in the base contract according to its Article 1.1.10 definition, and is not
capitalized in the base contract when it is used in a more generic sense.  *Compare* ECF
No. 42-1 at 24 ("Engineer's written clarification, interpretation, or decision will be final
and binding . . . on Owner, unless it appeals by filing a Claim."), *with id.* at 27
(describing Northern Lines's obligations "[i]f a damage or injury claim is made by the
owner or occupant of [land adjacent to the project site]").  When used in the
supplementary conditions, "claim" is never capitalized.  Second, the term "Claim" is
used in the base agreement in connection with an informal dispute-resolution process
for conflicts among the project contractor, engineer, and owner.  Articles 12 and 17 of
the base contract set forth a comprehensive process for submitting, reviewing, and
resolving such "Claims," and the definition of "Claim" was clearly tailored to that

(continued...)

explained, however, the forum-selection clause does not require that "any *Claims* under the Contract" be venued in the Faribault County District Court; it instead requires that "any litigation *concerning* claims under the Contract" be venued in the Faribault County District Court.  ECF No. 37-1 at  19–20.  The claims asserted by Granite in this lawsuit— although not themselves "Claims" as that term is defined in Article 1.1.10—nonetheless *concern* such "Claims."

Second, Granite points out that the forum-selection clause appears in Article 17, which sets out a process for "final resolution of disputes" under the construction contract.  ECF No. 42-3 at 79.  Because Granite is not seeking to resolve claims under Article 17, it argues, the forum-selection clause does not apply.

Granite is mistaken.  Article 17.1.B sets forth a dispute-resolution process "[f]or any dispute subject to resolution under this Article."  *Id*.  Article 17.1.A defines "[t]he . . . disputed matters [that] are subject to final resolution under the provisions of this Article" as

> 1.   A timely appeal of an approval in part and denial in part of a Claim, or of a denial in full; and

---

[4](...continued)
process.  By contrast, the forum-selection clause applies to *litigation*, not to the informal dispute-resolution process.  ECF No. 37-1 at 19–20.  Transposing Article 1.1.10's definition of "Claims" onto the forum-selection clause results in an ill fit.  Nevertheless, the Court will assume, for the sake of argument, that the word "claims" in the forum-selection clause is defined in Article 1.1.10.

> 2.    Disputes between [the County] and [Northern Lines]
>        concerning the Work or obligations under the
>        Contract Documents, and arising after final payment
>        has been made.

*Id.*  Articles 17.1.A and 17.1.B are both part of the base contract, and both are clearly

directed to the contractual dispute-resolution process.

By contrast, Articles 17.1.C and 17.1.D appear in the supplementary conditions

(not in the base contract) and are not so limited.  Article 17.1.C describes an informal

consultation process that applies to "*any* conflicts that arise during the design or

construction of the project or following the completion of the project" and to "*all*

disputes . . . arising out of or relating to this agreement"—many of which disputes

would plainly fall outside the scope of Articles 17.1.A and 17.1.B.  ECF No. 37-1 at 19

(emphasis added).  And Article 17.1.D—the forum-selection clause—applies to "*[a]ny*

litigation concerning claims under the Contract."  *Id.* (emphasis added).  In short, the

forum-selection clause is not limited to claims that are subject to the contractual

dispute-resolution process described in Articles 17.1.A and 17.1.B.

*C. Validity of the Forum-Selection Clause*

Having determined that Granite is bound by the forum-selection clause in the construction contract—and having determined that the claims asserted by Granite in this lawsuit fall within the scope of that clause—the Court must next consider whether the forum-selection clause is valid and enforceable.  "Both federal and Minnesota law consider forum selection clauses to be prima facie valid, and enforce them unless they are unjust, unreasonable, or invalid."  *United Fire & Cas. Co. v. Weber, Inc.*, 434 F. Supp. 3d 729, 732 (D. Minn. 2020) (citing *Servewell Plumbing, LLC v. Fed. Ins. Co.*, 439 F.3d 786, 789 (8th Cir. 2006); *Hauenstein & Bermeister, Inc. v. Met-Fab Indus., Inc.*, 320 N.W.2d 886, 889–90 (Minn. 1982)).

Granite does not dispute the validity of the forum-selection clause in the construction contract.  *See* ECF No. 41 at 13 ("The issue here, however, is the scope of the Contractor's forum-selection clause, not its validity.").  Northern Lines, however, argues that enforcing the clause against Granite would be unjust and unreasonable because Granite did not have an opportunity to negotiate the contract's terms.  ECF No. 43 at 11 (internal citation omitted).  But courts routinely enforce forum-selection clauses that were not negotiated.  *See, e.g., Carnival Cruise Lines, Inc. v. Schute*, 499 U.S. 585, 593–94 (1991) (enforcing non-negotiated forum-selection clause in tickets against ticket holders); *M.B. Rests., Inc. v. CKE Rests., Inc.*, 183 F.3d 750, 753 (8th Cir. 1999) ("The

fact that the contract was a form contract and . . . not actually negotiated does not render the [forum-selection] clause per se unenforceable."); *Siebert v. Amateur Athletic Union of U.S., Inc.*, 422 F. Supp. 2d 1033, 1046 (D. Minn. 2006) ("Mere disparity in bargaining power, or lack of opportunity to negotiate, does not render a forum selection clause unenforceable.").

A forum-selection clause may be invalid if (1) the clause is the product of fraud or overreaching; (2) a party would be deprived of its day in court if the clause is enforced; or (3) enforcing the clause would contravene the public policy of the forum in which the suit is brought. *See St. Jude Med. S.C., Inc. v. Suchomel*, No. 19-CV-2400 (JRT/BRT), 2020 WL 1853653 (D. Minn. Apr. 13, 2020) (citing *Carnival Cruise Lines*, 449 U.S. at 593–95; *Servewell Plumbing*, 439 F.3d at 789–90). No party to this action has argued that any of these circumstances are present in this case. Accordingly, the Court finds that the construction contract's forum-selection clause is valid.

### D.  Public-Interest Factors

Finally, the Court must determine whether public-interest factors weigh against dismissal of this lawsuit pursuant to the forum-selection clause. *Atl. Marine*, 571 U.S. at 67. Those factors include "[1] the administrative difficulties flowing from court congestion; [2] the local interest in having localized controversies decided at home; and

[3] the interest in having the trial of a diversity case in a forum that is at home with the

law." *Id.* at 62 n.6 (citation and quotation marks omitted).

Public interest factors will "rarely" overcome a valid forum-selection clause and

thus "the practical result is that forum-selection clauses should control except in

unusual cases." *Id.* at 64. This is not one of those "unusual cases." The Faribault

County District Court is local and at home with Minnesota law, and no party has

identified any administrative difficulties that would result from dismissal.

For these reasons, the complaint in this action is dismissed without prejudice

pursuant to the doctrine of forum non conveniens. The defendants have pending a

number of counterclaims and cross-claims. The Court will order the defendants to

address whether those counterclaims and cross-claims should now be dismissed in light

of this order.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1.   Defendant Faribault County's motion to dismiss [ECF No. 34] is

GRANTED and the complaint in this action is DISMISSED WITHOUT

PREJUDICE.

2.     If the defendants do not voluntarily dismiss their counterclaims and cross-

claims without prejudice by August 21, 2020, then the parties must, by

August 28, 2020, file memoranda addressing whether those counterclaims

and cross-claims should be dismissed without prejudice in light of this

order.  One memorandum must be filed by plaintiff Granite Re, Inc., one

memorandum must be filed by defendant Faribault County, and one

memorandum must be filed jointly by defendants Northern Lines

Contracting, Inc., Northland Dedicated, LLC, BR Holdings, Inc., and Blair

J. Raitz.  Each memorandum must not exceed 5,000 words.  No responses

or replies may be filed unless the Court so directs.

Dated:  August 12, 2020                         s/Patrick J. Schiltz
                                                Patrick J. Schiltz
                                                United States District Judge